# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                          Case No. 12-CR-154 (WCG/WEC)

MANUEL MENDOZA and
MARCO MAGANA,

        Defendants.

## RECOMMENDATION ON DEFENDANTS' MOTIONS TO SUPPRESS EVIDENCE

## I. PROCEDURAL BACKGROUND

On July 17, 2012, a criminal complaint was filed, naming among others[1] Marco Magana ("Magana") and Manuel Mendoza ("Mendoza") as defendants. On July 24, 2012, a grand jury returned a four-count indictment. In relevant part, Count One charges Magana and Mendoza with knowingly and intentionally conspiring to manufacture and distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and 18 U.S.C. § 2. Counts Two and Three charge Magana and Mendoza with knowingly and intentionally manufacturing and possessing with the intent to manufacture and distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18

---

[1] The complaint names Brian Magana, Maria Hilda Magana-Mendoza, Javier Magana, Marco Magana, and Manuel Mendoza. According to the affidavit in support of the complaint, Javier and Maria are Brian's parents, and Marco and Manuel are Brian's uncles. (Aff. ¶ 32.)

1

U.S.C. § 2.[2]  And Count Four charges Magana with knowingly possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Mendoza and Magana were arraigned on July 27 and 31, 2012, respectively; trial was originally set for October 1, 2012.

After the court granted two extensions, on September 13, 2012, Magana and Mendoza filed substantively identical motions to suppress all images gathered as a result of electronic surveillance of the alleged "grow site" at N12309 South Hill Road (the "Property").  The government responded to the motions on September 19, 2012.  Magana (but not Mendoza) filed a reply in support of his motion on October 2, 2012.  Consequently, the motions are ready for resolution.

## II. FACTS

The relevant facts are brief, undisputed, and based primarily on the affidavit submitted in support of the criminal complaint.  Javier Magana (a co-defendant who did not join the motion to suppress) is the owner of the Property.  (Aff. ¶ 8.)  The Property, which consists of about 22 mostly wooded acres, includes a single family residence with a detached garage, a small wood shed, and a locked gate at its entrance.  (Aff. ¶¶ 11, 25, 27.)  Magana and Mendoza also allege that "No Trespassing" signs are posted at various points throughout the Property.  (Magana Motion at 2; Mendoza Motion at 2.)

On July 12, 2012, law enforcement officers entered the Property through an adjacent property.  (Aff. ¶ 25.)  Outside the curtilage,[3] officers observed marijuana plants growing in a small clearing.

---

[2] Count Two charges that the offense occurred at W6898 and W6864 County Highway X, Middle Inlet, Wisconsin.  Count Three charges that the offense occurred at N12309 South Hill Road, Athelstane, Wisconsin.

[3] Curtilage is "the part of one's property, besides the house itself, in which private activities normally take place."  *United States. v. Simms*, 626 F.3d 966, 970 (7th Cir. 2010).

2

(Aff. ¶ 25.)  They then installed surveillance cameras covering the marijuana grow.  (Aff. ¶ 26.)  A few days later, a magistrate judge issued a warrant authorizing the installation of surveillance cameras on the Property.  (Aff. ¶ 29.)  Both Magana and Mendoza claim to be depicted in the videos.  (Magana Motion at 2; Mendoza Motion at 2.)  Law enforcement agents, however, have only identified images of Magana.  (Gov't Response at 2.)

### III.  DISCUSSION

Magana and Mendoza move to suppress all images gathered as a result of electronic surveillance of the alleged "grow site" on the Property, arguing that prior judicial authorization was required.[4]  The government, on the other hand, maintains that the Fourth Amendment does not protect the area under surveillance.[5]

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  In *Oliver v. United States*, 466 U.S. 170, 176 (1984), the Supreme Court held that open fields, as distinguished from curtilage, are not "effects" within the meaning of the Fourth Amendment.  The fact that the intrusions at issue were trespasses at common law did not affect the Fourth

_____

[4] Specifically, Magana and Mendoza argue that the images were obtained contrary to Title III of the Omnibus Crime Control and Safe Streets Act of 1986 ("Title III").  Title III is only relevant, however, if the Fourth Amendment is implicated.  *See United States v. Torres*, 751 F.2d 875, 884 (7th Cir. 1984) ("Title III was Congress's carefully thought out, and constitutionally valid effort to implement the requirements of the Fourth Amendment with regard to the necessarily unconventional type of warrant that is used to authorize electronic eavesdropping.") (internal citations omitted).

[5] The government also briefly argues that there was no Fourth Amendment search because neither Mendoza nor Magana owned or leased the Property.  (Gov't Response at 4 n.2.)  The court need not address this argument because: (1) it is arguably underdeveloped; (2) the record does not disclose whether Mendoza or Magana *leased* the Property; and (3) as set forth below, the motion can be denied on other grounds.

3

Amendment analysis. *Id.* at 183. Recently, the Supreme Court reaffirmed the "open fields" doctrine as stated in *Oliver*. *See United States v. Jones*, 132 S. Ct. 945, 953 & n.8 (2012) ("The Fourth Amendment protects against trespassory searches only with regard to those items ('persons, houses, papers, and effects') that it enumerates.").

Magana and Mendoza urge the court to suppress because the locked gate, the alleged "No Trespassing" signs, and the fact that the Property is heavily wooded could lead to a subjective expectation of privacy. In *Oliver*, however, the Court rejected this same argument, reasoning that, under a case-by-case approach, "police officers would have to guess before every search whether landowners had erected fences sufficiently high, posted a sufficient number of warning signs, or located contraband in an area sufficiently secluded to establish a right of privacy." 466 U.S. at 181. Moreover, even under a pure privacy-rights test,[6] Magana and Mendoza could not show that a subjective expectation of privacy in open fields is "*legitimate* in the sense required by the Fourth Amendment." *Oliver*, 466 U.S. at 182.

Magana and Mendoza also emphasize that here, unlike in *Oliver*, officers placed photographic surveillance equipment on the Property. But the Supreme Court has upheld the use of technology as a substitute for ordinary police surveillance. *See United States v. Knotts*, 460 U.S. 276, 282 (1983) (finding that use of beeper did not alter the situation because "[n]othing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case"). And, to repeat, there is no allegation that the cameras at issue here recorded activities within the Property's residence or curtilage.

---

[6] In *Jones*, the Supreme Court placed a renewed emphasis on property rights, in addition to privacy rights. 132 S. Ct. at 950-51 (explaining that "Fourth Amendment rights do not rise or fall with the [reasonable-expectation-of-privacy] formulation").

4

*See United States v. Aguilera*, No. 06-CR-336, 2008 WL 375210 at *2 & n.3 (E.D. Wis. Feb. 11, 2008) (denying motion to suppress on similar facts). For these reasons, the Fourth Amendment is not in play.

**NOW THEREFORE IT IS RECOMMENDED** that Mendoza's and Magana's motions to suppress evidence be **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C), and Federal Rule of Criminal Procedure 59(b)(2) (as amended effective December 1, 2009), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of the date of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

**SO ORDERED** this 9th day of October, 2012, at Milwaukee, Wisconsin

> **BY THE COURT:**
>
> s/ William E. Callahan, Jr.
> WILLIAM E. CALLAHAN, JR.
> United States Magistrate Judge

5